**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**Hector H. TUESTA–TORO,
Defendant, Appellant.**

No. 93–2182.

United States Court of Appeals,
First Circuit.

Heard June 7, 1994.

Decided July 25, 1994.

Kevin G. Little, Los Angeles, CA, for appellant.

Jose A. Quiles Espinosa, Sr. Litigation Counsel, Hato Rey, PR, with whom Guillermo Gil, U.S. Atty., Washington, DC; and Warren Vazquez, Asst. U.S. Atty., Hato Rey, PR, were on brief, for appellee.

Before SELYA, CYR and BOUDIN, Circuit Judges.

CYR, Circuit Judge.

Following a three-day trial, a jury returned guilty verdicts on four drug-related charges against defendant-appellant Hector H. Tuesta Toro ("Tuesta"), who was sentenced to serve 128 months in prison, and this appeal ensued. Finding no reversible error, we affirm.

## I

### *FACTS*

We set out the salient facts in the light most favorable to the verdicts. *United States v. Tejeda*, 974 F.2d 210, 212 (1st Cir. 1992). On September 2, 1992, after receiving information from a confidential informant ("CI") that Tuesta and codefendant Carlos Martinez Diaz ("Martinez") were distributing large quantities of cocaine in the San Juan metropolitan area, the United States Drug Enforcement Administration ("DEA") recorded telephone conversations during which Martinez agreed to sell the CI five kilograms of cocaine at $16,500 per kilogram and identified Tuesta as his source. Martinez in turn spoke with Tuesta by cellular phone in order to establish the price and quantity of the cocaine to be sold to the CI and the site of the drug transaction, but then lost phone contact with Tuesta.

The next day Martinez advised the CI by phone that a one-kilogram transaction (rather than the five-kilogram transaction discussed the day before) would take place that afternoon, but that Tuesta did not wish to be seen by the buyer. Martinez reestablished telephone contact with Tuesta at 2:40 in the afternoon. En route to the scene of the transaction, Martinez noted that Tuesta was carrying a gun and more than one kilogram of cocaine. At Tuesta's instruction, Martinez parked their vehicle so that Tuesta could witness the drug deal without being observed. Martinez then exited the car and delivered the cocaine to the CI, who was accompanied by an undercover DEA agent.

Shortly thereafter, Martinez and Tuesta were arrested and charged with possessing cocaine, with intent to distribute, *see* 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2; carrying a firearm during and in relation to a drug trafficking offense, *see id.* §§ 942(c)(1), 2; and with two counts of using a communication facility to facilitate a drug trafficking offense, *see* 21 U.S.C. § 843(b), 18 U.S.C. § 2. Martinez eventually entered into a plea agreement with the government and testified against Tuesta at trial. Following Tuesta's conviction on all counts, he was sentenced to 128 months' imprisonment.

## II

### *DISCUSSION*

#### A. *Evidence Rule 404(b)*

Prior to trial, Tuesta filed an omnibus motion to compel discovery which included the following request:

> [a]ll confessions, admissions and *statements* to the United States Attorney, or any law enforcement agent, *made by any other person*, whether indicted or not, *that in any way* exculpate, inculpate or *refer to the defendant, whether or not such* confessions, admissions and *statements have been reduced to writing.*

(Emphasis added.) The motion made no mention of Rule 404(b) or "other wrongful acts" evidence.

The government responded that it intended to pursue an "open file" discovery policy and that only government agents would be called to testify against Tuesta. Following the government's response, however, Martinez entered into a plea agreement which provided that he would testify against Tues-

ta. Except as discussed below, Tuesta did not claim surprise.

At trial, the defense objected when the government asked Martinez how he knew Tuesta. The government responded that Martinez would testify to prior drug dealings with Tuesta. Tuesta objected on the ground that he had not been afforded pretrial notification of the government's intention to use Rule 404(b) evidence. The court admitted the evidence for the limited purpose of refuting Tuesta's "mere presence" defense, *see United States v. Hernandez,* 995 F.2d 307, 314 (1st Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 407, 126 L.Ed.2d 354 (1993), after ruling that its probative value was not substantially outweighed by the danger of unfair prejudice, *see* Fed.R.Evid. 403. The court, acting *sua sponte,* gave the jury a contemporaneous limiting instruction.

## 1. *The Notification Requirement of Rule 404(b)*

Tuesta first contends that the "other wrongful acts" evidence introduced through codefendant Martinez should have been excluded because the government failed to provide the pretrial notification required by Evidence Rule 404(b) in response to Tuesta's omnibus motion for discovery. The government maintains that Tuesta made no cognizable Rule 404(b) request prior to trial.

■ The question presented is one of first impression: how particular must a pretrial discovery request be in order to trigger the government's responsibility to disclose Rule 404(b) evidence as a precondition to its use at trial? Rule 404(b), as amended in 1991, provides in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, *provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial ... of the general nature of any such evidence it intends to introduce at trial.*

Fed.R.Evid. 404(b) (emphasis added). As the rule speaks only of a "request by the accused" and the duty of the prosecution to provide reasonable pretrial notification "of the general nature of any such evidence it intends to introduce at trial," *id.,* we turn elsewhere for guidance.

The advisory committee's notes to the 1991 amendment define the responsibilities of the respective parties in requesting and affording pretrial notification under Rule 404(b): "The amendment to Rule 404(b).... expects that counsel for ... *the defense* ... will submit the necessary request ... in a *reasonable* and timely manner." Fed.R.Evid. 404(b) advisory committee's notes (1991 amendment) (emphasis added). The advisory committee note simply confirms the requirement implicit in the rule itself—that the defense must submit, "in a reasonable and timely manner," its request for pretrial notification of the general nature of any evidence of other crimes, wrongs, or acts the government intends to introduce at trial for purposes of proving "motive, intent, preparation, plan, knowledge, identity or absence of mistake or accident," Fed.R.Evid. 404(b). We think it beyond question, therefore, that a "reasonable" request for notification, at a minimum, must be sufficiently clear and particular, in an objective sense, fairly to alert the prosecution that the defense is requesting pretrial notification of the general nature of any Rule 404(b) evidence the prosecution intends to introduce.

■ An overbroad pretrial request, like the present—for "confessions, admissions and statements ... that in any way exculpate, inculpate or refer to the defendant"—is insufficiently specific at the very least, if not misleading. *Cf. United States v. Carrasquillo–Plaza,* 873 F.2d 10, 12 (1st Cir.1989) (noting that overbroad discovery requests, absent a specific showing of materiality, do not afford the prosecution proper notice in analogous Rule 16 context); *United States v. Hemmer,* 729 F.2d 10, 14–15 (1st Cir.) (same), *cert. denied,* 467 U.S. 1218, 104 S.Ct. 2666, 81 L.Ed.2d 371 (1984). The omnibus motion submitted by Tuesta made no discernible reference to anything resembling "oth-

er wrongful acts" evidence nor did it request mere notification of the general nature of any such evidence. Rather, it demanded outright pretrial disclosure of statements in any form, referring to the defendant in any way, without regard to their admissibility or the government's intention to introduce them.[1] *See* Fed.R.Evid. 404(b); *cf., United States v. Williams,* 792 F.Supp. 1120, 1133 (S.D.Ind. 1992) (notification required in response to detailed request reciting text of Rule 404(b)); *United States v. Alex,* 791 F.Supp. 723, 728 (N.D.Ill.1992) (similar; request specifically referencing Rule 404(b)).

Accordingly, at a minimum the defense must present a timely request sufficiently clear and particular, in an objective sense, to fairly alert the prosecution that the defense is invoking its specific right to pretrial notification of the general nature of all Rule 404(b) evidence the prosecution intends to introduce at trial. The rule we describe will bring pretrial practice under Rule 404(b) in line with circuit precedent governing the prosecution's duty to provide discovery material under Federal Rule of Criminal Procedure 16. *Cf.* Fed.R.Evid. 404(b) advisory committee's notes (1991 amendment) (noting that amended rule "places Rule 404(b) in the *mainstream* with notice and disclosure provisions *in other rules of evidence*" but was not intended to impose on government a greater disclosure burden than "currently ... required ... under [Fed.R.Crim.P.] 16") (emphasis added). *See also supra* note 1.

### 2. *Admission of 404(b) Evidence at Trial*

■ Next, Tuesta contends that it was reversible error to admit the Martinez testimony to rebut Tuesta's "mere presence" defense. These evidentiary rulings normally are reviewed for abuse of discretion. *United States v. Figueroa,* 976 F.2d 1446, 1454 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1346, 122 L.Ed.2d 728 (1993). As Tuesta made no contemporaneous objection, however, we review for "plain error," *id.* at 1453, and will reverse only if the error "seriously

affect[ed] the fundamental fairness and basic integrity of the proceedings," *United States v. Carty,* 993 F.2d 1005, 1012 n. 9 (1st Cir. 1993).

■ A Rule 404(b) proffer must undergo a two-step inquiry:

First, under the "absolute bar" of Rule 404(b), the evidence is inadmissible if relevant solely to show the defendant's character or propensity for criminal conduct; it must have some "special relevance" to a material issue such as motive, opportunity, intent, preparation, plan or knowledge. Second, under Rule 403, the trial court must satisfy itself that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, confusion or undue delay.

*Id.* at 1011 (citations omitted). The district court admitted the Martinez testimony relating to prior drug deals with Tuesta for the limited purpose of refuting Tuesta's "mere presence" defense that he was at the drug scene by "mistake." Fed.R.Evid. 404(b) (evidence admissible to prove, *inter alia,* knowledge, intent, absence of mistake); *Carty,* 993 F.2d at 1011 (prior drug-dealing evidence admitted where defendant raised "mere presence" defense); *United States v. Agudelo,* 988 F.2d 285, 287 (1st Cir.1993) (same). Further, after the district court ruled that the probative value of the evidence outweighed any "danger of unfair prejudice," Fed.R.Evid. 403, it minimized the potential for prejudice with a contemporaneous limiting instruction, which it reiterated in the final charge. *See Tejeda,* 974 F.2d at 214. We discern no error, plain or otherwise.

### B. *Use of Communication Facility to Effect Drug Crime*

Tuesta challenges the guilty verdicts on counts three and four, on the grounds that the district court misinterpreted 18 U.S.C. § 2 and that there was insufficient evidence that he aided and abetted Martinez in the use of a communication facility to effect the

---

1. As a further condition precedent to the government's duty, we note that Rule 404(b) seemingly requires pretrial notification only of "other wrongful acts" evidence which the government presently intends, *as of the time the government responds to the request,* to introduce at trial. The present appeal neither requires that we determine the point nor consider its ramifications.

cocaine transaction, *see* 21 U.S.C. § 843(b). We disagree.

Section 843(b) prohibits use of a communication facility to cause or facilitate a felonious drug offense. *See United States v. Cordero,* 668 F.2d 32, 43 (1st Cir.1981). Tuesta's challenge to the sufficiency of the evidence requires that "[w]e view the evidence in the light most favorable to the verdict, in order to determine whether a rational trier of fact could have found guilt beyond a reasonable doubt. All reasonable inferences are drawn in favor of the verdict and any credibility determination must be compatible with the judgment of conviction." *Tejeda,* 974 F.2d at 212 (citations omitted).

■ The jury was entitled to credit Martinez's testimony that he telephoned Tuesta, on September 2 and 3, 1992, to arrange the time and place at which the cocaine transaction would occur, as well as the price and quantity of cocaine. No more was required. Thus, even if Tuesta had played no part in the two telephone conversations *between Martinez and the CI,* the jury rationally could have inferred, from the two telephone conversations *between Martinez and Tuesta,* that Tuesta knowingly used a communication facility to effect the cocaine deal.[2]

### C. "Background" Hearsay

A DEA agent testified that during a debriefing session the CI stated that Martinez acted in behalf of Tuesta in setting up cocaine deals. Tuesta contends that admission of this hearsay testimony, over timely objection, was error. We agree.

■ As the government conceded at oral argument, the agent's testimony purported to relate an out-of-court statement by the CI offered for the *sole* purpose of proving the truth of the matter asserted (*i.e.,* Tuesta's role in the instant offenses). *See* Fed. R.Evid. 801; *cf. Figueroa,* 976 F.2d at 1458 (noting that so-called "background" hearsay

is not hearsay at all unless introduced to prove the truth of the matter asserted). Thus, its admission constituted error. We conclude, however, that the error was harmless. *See id.*

First, the testimony was cumulative of Martinez's testimony on the same matter. Further, independent admissible evidence confirmed that Tuesta determined the conditions of sale, supplied the cocaine, and witnessed the cocaine exchange from nearby while in possession of a loaded firearm. Thus, "we can say 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the [jurors'] judgment was not substantially swayed by the error.'" *Id.* at 1459 (quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946) ("harmless error" standard)).

### D. *Ineffective Assistance of Counsel*

■ Next, Tuesta attempts to present an "ineffective assistance" claim on direct appeal. As a general rule, we address such Sixth Amendment claims on direct appeal only if "the critical facts are not in dispute and a sufficiently developed record exists." *United States v. Jadusingh,* 12 F.3d 1162, 1169 (1st Cir.1994) (citing *United States v. Daniels,* 3 F.3d 25, 26–27 (1st Cir.1993)). Ordinarily, a collateral proceeding under 28 U.S.C. § 2255 is the proper forum for factbound ineffective assistance claims. *See Jadusingh,* 12 F.3d at 1170. Tuesta's contention that trial counsel inexplicably failed to discover the identity of the CI was not raised in the district court and is sufficiently factbound to preclude effective review on the present record.

### E. *Prosecutorial Misconduct*

■ Tuesta contends that the prosecution improperly vouched for Martinez's testimony during its closing argument.[3] In the absence of a contemporaneous objection, we

---

2. Since the indictment, as well as the jury instruction on the section 843(b) charges, encompassed Tuesta's conduct as a principal and as an aider and abettor, we need not address his contention that he could not be convicted under 18 U.S.C. § 2 because there was no evidence that he

instructed Martinez to use a communication device to arrange the cocaine sale.

3. Tuesta argues that the prosecutor improperly vouched for Martinez's credibility by stating that "when a person repents and wants to cooperate, we need to present the testimony to the jury so

review allegations of prosecutorial misconduct for plain error, and will overturn a jury verdict only "if the government's closing argument 'so poisoned the well' that it is likely that the verdict was affected." *United States v. Smith,* 982 F.2d 681, 682 (1st Cir. 1993) (citing *United States v. Mejia–Lozano,* 829 F.2d 268, 274 (1st Cir.1987)). Any vouching which may have occurred was so faint as to be virtually indiscernible even to the trained ear. We are confident that there is no likelihood that the verdicts were tainted by the alleged prosecutorial misconduct. *Id.*

### F. Cumulative Error

As most assignments of error were baseless, we must also reject Tuesta's final contention that the conviction was tainted by cumulative error. *See United States v. Barnett,* 989 F.2d 546, 560 (1st Cir.) ("The Constitution entitles a criminal defendant to a fair trial, not a perfect one.") (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)), *cert. denied,* — U.S. ——, 114 S.Ct. 148, 126 L.Ed.2d 110 (1993).

### G. Sentencing Error

#### 1. Acceptance of Responsibility

 Tuesta argues that the district court improperly denied a reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, without affording him an adequate opportunity to evince remorse.

Tuesta distorts the record. He continued to assert his innocence during a post-conviction interview with the probation officer. At sentencing, the district court *twice* invited him to accept responsibility, by pointing out that the sentencing hearing would be his last opportunity to do so.[4] Nonetheless, though Tuesta asked the court for leniency, he said nothing which might be taken to indicate remorse. Thus, he squandered several opportunities to verbalize acceptance of respon-

sibility, leaving the district court little choice but to adopt a presentence report recommendation that no reduction be allowed. There was no error.

#### 2. Sentencing Enhancement for Managerial Role

Finally, Tuesta challenges the two-level enhancement imposed for his managerial role in the offense, *see* U.S.S.G. § 3B1.1 (1993), which the district court premised in part upon the unusual purity of the cocaine supplied by Tuesta. A defendant's role in the offense must be established by a preponderance of the evidence, *see United States v. Sostre,* 967 F.2d 728, 731 (1st Cir.1992), and the sentencing court's factual findings are reviewed only for clear error, *Jadusingh,* 12 F.3d at 1169.

The exercise of decision-making authority, the degree of participation in planning or organizing the offense, and the degree of control and authority the defendant exercised over others are among the factors to be considered in determining managerial role. *See* U.S.S.G. § 3B1.1, comment (n. 4). The record is replete with evidence that Martinez acted at the direction of Tuesta in setting the time and place of the drug transaction, and the price and quantity of the cocaine. *United States v. Cronin,* 990 F.2d 663, 665 (1st Cir.1993) (noting that such evidence supports finding of managerial role.) Additionally, the district court properly relied on the unusual purity of the cocaine (98%) Tuesta supplied to Martinez, as a further ground for inferring that Tuesta performed a managerial role. *See United States v. Iguaran–Palmar,* 926 F.2d 7, 9 (1st Cir. 1991). There was no error.

*The judgment is **affirmed.***

---

that the jury has the facts at hand." Although he states that there was no evidence that Martinez approached the government and offered to testify, Tuesta concedes that evidence was presented that the plea agreement did not require Martinez to testify. Second, Tuesta contends that the prosecutor's reference to "the facts at hand" placed the government's prestige behind Martinez.

**4.** Prior to Tuesta's allocution, the court stated: "I haven't heard any acceptance of responsibility." Moments later, the court said: "Well, you can say some things that may be able to help you; but if you don't say them ... that's up to you."