[NOT FOR PUBLICATION]

 United States Court of Appeals
 For the First Circuit

 

No. 95-2246

 UNITED STATES,

 Appellee,

 v.

 GUILIANO ANTOINE,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Patti B. Saris, U.S. District Judge]

 

 Before

 Lynch, Circuit Judge,

 Hill and John R. Gibson, Senior Circuit Judges.

 

 Charles P. McGinty, Federal Defender Office, for appellant.
 James  F.  Lang, Assistant United States Attorney, with whom
Donald K. Stern , United States Attorney, was on brief for appellee.

 

 September 15, 1997
 

 Of the Eleventh Circuit, sitting by designation.

 Of the Eighth Circuit, sitting by designation.

 HILL,  Senior Circuit Judge . Guiliano Antoine was charged

with conspiracy to engage in the business of dealing in firearms

without a license, in violation of 18 U.S.C. S 371, and with the

substantive offense of engaging in the business of dealing in

firearms without a license, in violation of 18 U.S.C.

S 922(a)(1)(A). At trial, the court admitted evidence of flight

and instructed the jury regarding that evidence. Antoine was

convicted. This appeal ensued.

 I.

 The government's principal witness at trial was Roy

Boone. Boone testified that he cooperated with Bureau of Alcohol,

Tobacco, and Firearms (ATF) agents as required by his plea

agreement on firearms charges against him. The government believed

Antoine had been illegally purchasing guns from Boone. Boone

agreed to offer to sell more guns to Antoine and to allow the

government to record his conversations with Antoine and set up the

arrangements for the "buy." 

 Boone contacted Antoine and offered to sell him nine

millimeter handguns. Boone told Antoine to meet him at a motel

near Boston to see the guns. A video camera hidden in the room

recorded the events. Antoine and two companions arrived and

examined the guns (provided by the ATF). Boone and Antoine

negotiated a price for the guns. Antoine stated that he was low on

cash, but gave Boone a $250 deposit for several of the guns and

promised to pay the rest and collect the guns later that night. 

 -2-

 As soon as Antoine and his companions left the motel

room, ATF agents and Boston Police officers moved in to arrest

them. An ATF agent testified without objection that Antoine ran

across the parking lot "attempting to flee." The agent gave chase,

and Antoine was apprehended.

 Antoine was indicted and charged with conspiracy to deal

in and dealing in firearms without a license. On the fifth day of

his trial, just prior to the closing arguments, the court held a

brief charge conference (having held a more lengthy conference the

day before). The court indicated sua  sponte that it was

considering giving a consciousness of guilt instruction based on

the testimony that Antoine had fled from police immediately prior

to his arrest. After much discussion with counsel, the court gave

the following instruction:

 In determining whether the government met
 its burden of proving the defendant acted
 wilfully--remember we discussed this
 before--how do you decide someone's state
 of mind? You may consider the direct
 evidence before you, as well as the
 circumstantial evidence as to his state of
 mind.

 The one thing that you can also consider
 is you've heard testimony that Mr. Antoine
 at one point fled right after the purchase
 of--well, right after whatever happened in
 that motel room.

 The government claims that the flight or
 the--

 (Pause.)

 Well, let me just say, if you do find that
 the defendant did flee, if you find that
 he fled, you're permitted to consider
 whether such actions indicate feelings of

 -3-

 guilt by Mr. Antoine and whether in terms
 of feeling guilt might tend to show actual
 guilt on these charges.

 You are not required to draw such
 inferences and you should not do so unless
 they appear to be reasonable in light of
 all the circumstances of the case. 

 If you decide that such inferences are
 reasonable, it will be up to you to decide
 how much importance to give them. But you
 should always remember that there may be
 many reasons why an innocent person might
 flee. Such conduct does not necessarily
 reflect feelings of guilt. Please bear in
 mind that a person who's innocent might
 flee and a person having feelings of guilt
 is not necessarily guilty in fact.
 Because such feelings are sometimes found
 in innocent people. 

 If you find that the defendant did flee,
 the government has proven beyond a
 reasonable doubt, in order to divert
 suspicion or for any other reason that you
 find reflect feelings of guilt, you may,
 but are not required to, infer that Mr.
 Antoine believed that he was guilty. You
 may not, however, infer on this basis
 alone that the defendant is, in fact,
 guilty of the crime for which he is
 charged. Whether or not the evidence as
 to the defendant's statements--excuse me,
 to the defendant's fleeing shows that Mr.
 Antoine believed that he was guilty and
 the significance, if any, to be attached
 to any such evidence of flight are matters
 for you, the jury, to decide.

 But first you have to decide beyond a
 reasonable doubt whether or not the
 government has proven that he fled and
 then you have to decide what inference, if
 any, to draw from that.

 At the conclusion of the charge, defense counsel objected

to the consciousness of guilt instruction, noting that while the

court had cautioned the jury that an innocent person might flee, it

 -4-

had not also stated that a person "might flee from something he

perceived as a crime, which conduct doesn't bear on" the charged

offense. After consultation, the court gave the following

supplemental instruction:

 [O]n the tail-end of the charge, I talked
 to you briefly about what weight, if any,
 you were going to give to flight. And I
 just want to point out to you, that not
 only do sometimes innocent people flee,
 but sometimes people can be guilty of a
 crime or think that they are guilty of a
 crime and flee. But that crime may have
 absolutely nothing to do with the crime
 charged here.

 So that you have to decide whether or not
 the government has proven flight and
 whether or not there's any inference to be
 drawn from that, given the crime charged
 here. Not some other crime or some other
 perception, but the crime charged here.

 Following the supplemental instruction, the court

inquired whether either party had any further concerns about the

charge. Both counsel said that they had none.

 II.

 Antoine raises only one issue on appeal--whether the

district court abused its discretion by giving a consciousness of

guilt jury instruction that was based on his attempt to flee from

the arresting officers. We hold that it did not.

 Evidence of flight may be admitted at trial as indicative

of a guilty mind, so long as there is an adequate factual predicate

creating an inference of guilt of the crime charged.  United States

v. Camilo  Montoya, 917 F.2d 680, 683 (1st Cir. 1990) (quoting

United  States v. Hernandez-Bermudez, 857 F.2d 50, 52 (1st Cir.

 -5-

1988)). There was an adequate factual predicate for the charge

given in this case.

 The evidence at trial established that Antoine and Boone

had an agreement whereby Boone would purchase handguns in Georgia,

transport them to Boston, and sell them to Antoine. Pursuant to

this agreement, Boone purchased guns in Georgia which he

subsequently sold to Antoine in Boston. After being confronted by

ATF agents and agreeing to cooperate with their investigation,

Boone had one electronically monitored meeting and several

telephone conversations with Antoine in which they discussed

Antoine's purchase of additional handguns from Boone. Antoine went

to Boone's motel room for the express purpose of viewing the

handguns. In the room, Antoine and two companions viewed the guns,

selected certain of them for purchase, and Antoine made a partial

payment to Boone for the weapons. Antoine told Boone he would pay

for and take custody of the remaining guns later that same night

after he acquired more money. After exiting the room, Antoine and

the other two men attempted to flee on foot from the agents. The

flight evidence was admitted without objection. 

 These facts establish a completely adequate factual

predicate for the crimes charged against Antoine. Under these

facts, the jury could reasonably infer that Antoine was guilty of

illegal dealing in arms. The jury could also reasonably infer that

Antoine ran from authorities because he believed his conspiratorial

gun dealing activities with Boone had been discovered, i.e., that

he was conscious of his guilt. Based on the presence of numerous

 -6-

agents and police officers outside the motel room, a reasonable

jury could have inferred that Antoine fled because he recognized

that he had been "set up" by Boone and that the authorities were

well aware of their prior course of illegal conduct. See, e.g.,

United  States v. Romero-Carrion, 54 F.3d 15, 17 (1st Cir. 1995)

(attempt to flee evidences a keen consciousness of guilt); United

States v.  Luciano-Mosquero, 63 F.3d 1142, 1156 (1st Cir. 1995) (as

long as there is an adequate factual predicate supporting an

inference of guilt on the crime charged, evidence of flight may be

admitted to show consciousness of guilt).

 Antoine argues that his flight merely reflected knowledge

that he had just left a motel room full of guns, not that he

intended to buy any. If so, the fact of flight would not support

any inference of guilt as to the offenses charged.

 The court, however, very carefully and fully instructed

the jury that Antoine's flight may have been for innocent reasons.

The court reminded the jury that they need not draw any conclusions

from the flight evidence and to weigh the importance of such

inferences should they find them reasonable. This instruction did

not invite the jury to convict based upon an inference of guilt as

to another crime, and was not an abuse of discretion. See United

 Antoine also argues that the court's instruction allowed the jury
to infer from flight that he knew of the federal license
requirement for dealing in firearms--a necessary component of the
willfulness element of the gun-dealing charge. This argument is
without merit. The other evidence was sufficient to permit the
jury to infer that Antoine knew his course of conduct was illegal.
The jury was instructed that they might infer from flight that
Antoine was conscious of his guilt.

 -7-

States v. Hernandez, 995 F.2d 307, 314-15 (1st Cir. 1993)

(significance of evidence of flight is for the jury) (citing

Hernandez-Bermudez, 857 F.2d at 52); United  States v. Noone, 913

F.2d 20, 29-31 (1st Cir. 1991) (no error if flight instruction sets

out appropriate legal framework for jury consideration of

contention that accused fled for entirely innocent reasons);  United

States v. Camilo  Montoya, 917 F.2d 680, 683 (1st Cir. 1990) (no

error if flight instruction has a solid evidentiary basis and the

instruction a correct statement of the law). See  also United

States v. Martinez, 83 F.3d 371, 373 (11th Cir. 1996) (where the

act for which defendant claims to have fled and the offense charged

are sufficiently related, evidence of flight and a consciousness of

guilt instruction are not abuse of discretion). 

 III.

 Antoine did not object to the admission of evidence of

his flight from the scene of the crime charged to him. The jury

heard this evidence, and they were permitted to consider it. The

court undertook to instruct them as to its proper use. The court

cautioned the jury against overly broad inferences, and against any

inference at all if they felt it unreasonable to do so. The

instruction was not an abuse of discretion. The conviction is

affirmed.

 -8-